IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | : | Case No. 4:09-MC-00139 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

November 24, 2009

**BACKGROUND:**

The present matter before this Court arises out of the bankruptcy

proceedings of Adelphia Communications Corporation ("ACC"). After ACC filed

for bankruptcy in 2002, a recovery trust called the Adelphia Recovery Trust

("ART") was created. ART, the plaintiff in the present matter, has since filed an

action in the United States District Court for the Southern District of New York

against more than forty financial institutions and their respective investment

banking firms ("Bank Defendants"). In this action, ART claims that the Bank

Defendants "knowingly aided and abetted a fraud by the ACC's majority

shareholders and directors . . . " by providing loans to particular subsidiaries of

ACC. (Rec. Doc. No. 13 at 2). ART alleges billions of dollars in damages. Id.

As part of the underlying litigation in the Southern District of New York, this Court issued two subpoenas to appear for depositions and produce documents to two non-party witnesses living in Coudersport, Pennsylvania. The two non-party witnesses are Colin Higgin, the former Deputy General Counsel of ACC, and Karen Chrosniak Larsen, the former Director of Investor Relations. (Rec. Doc. Nos. 11 and 13). Both Higgin and Larsen appeared for their depositions; however, both invoked their Fifth Amendment right against self-incrimination during their scheduled depositions. In fact, Higgin and Larsen answered virtually none of the questions asked of them at their respective depositions.

On October 30, 2009, the Bank Defendants filed motions to compel the deposition testimony of Higgin and Larsen. (Rec. Doc. Nos. 11 and 13). In their motions to compel, the Bank Defendants argue that Higgin and Larsen's attempted use of the privilege is overly broad and that the testimony of neither witness would raise a real or substantial risk of self-incrimination. Id. Also on October 30, 2009, the Bank Defendants filed a motion to expedite consideration of their motions to compel the testimony of both Higgin and Larsen. (Rec. Doc. Nos. 12 and 14). The Bank Defendants argued that, in light of a number of approaching deadlines in the action in the Southern District of New York, an expedited briefing schedule relating to the pending motions to compel was appropriate. Id. On November 2,

2009, we granted the Bank Defendants' motion for expedited consideration of their motions to compel deposition testimony from Higgin and Larsen. (Rec. Doc. Nos. 15 and 16).

Pursuant to this expedited briefing schedule, Higgin filed a response to the Bank Defendants' motion to compel on November 9, 2009.[1] (Rec. Doc. No. 18). Plaintiff ART filed a brief opposing the Bank Defendants' motions to compel the testimony of Higgin and Larsen on November 9, 2009. (Rec. Doc. No. 20). In its brief, ART argues that both Higgin and Larsen have a valid basis for invoking their Fifth Amendment privilege against self-incrimination.[2] Id. at 6-16. ART also requests that this Court consider transferring the motion to compel to the district

---

[1] Higgin attached to his response a letter sent by his attorney to Christopher Clark, an Assistant U.S. Attorney in the U.S. Attorney's Office for the Southern District of New York. (Rec. Doc. No. 18 at 3-4). In his response, Higgin claims that the letter shows he "is both a subject and target of the U.S. Attorney's Office criminal prosecution of securities and bank fraud at Adelphia . . . ." Id. at 1. Higgin also claims that the letter confirms "the initiation of the completely new charge of perjury against" him. Id. However, in the letter, Higgin's attorney clearly states that the U.S. Attorney's Office has "not identified Mr. Higgin as a target," but only as a "subject." Id. at 3. Additionally, there is no mention in the letter of the initiation of any perjury charge against Higgin.

[2] Interestingly, ART concedes that "it would be in the interest of the Trust for Mr. Higgin and Ms. Larsen to agree to testify . . . ." Id. at 1. In addition, ART states that it "would welcome Mr. Higgin's and Ms. Larsen's testimony on all these matters . . ." and that it desires to have both witnesses "provide substantive testimony . . . ." Id. at 6, 16.

court in the Southern District of New York, which is familiar with the underlying claim and discovery issues between the parties.  Id. at 2.

On November 16, 2009, the Bank Defendants filed reply briefs in support of their motions to compel the deposition testimony of Larsen and Higgen.  (Rec. Doc. No. 23 and 24).  As to Larsen, the Bank Defendants argue that transfer to the district court in the Southern District of New York would be improper because that court lacks jurisdiction over Larsen.  (Rec. Doc. No. 23 at 8-9).  In addition, the Bank Defendants argue that appointment of counsel for Larsen would be improper and that Larsen should be compelled to testify.  Id. at 2-8, 9.  The Bank Defendants also note that there is no real risk of prosecution to Larsen if she were to testify, especially in light of the non-prosecution agreement between herself and the U.S. Attorney's Office for the Southern District of New York.  Id. at 4-7.  As to Higgin, the Bank Defendants argue that ART lacks standing to oppose the motion to compel and, even if ART did have standing, Higgin should still be compelled to testify.  (Rec. Doc. No. 24 at 5-9).  The Bank Defendants also argue that transfer to the Southern District of New York would be jurisdictionally improper.  Id. at 10-11.

As the parties have filed the requisite motions, briefs, and reply briefs, the matter is ripe for disposition.  Therefore, for the following reasons, we will deny

the motion to compel.

**DISCUSSION:**

The issue before this Court is whether Larsen and Higgin properly have invoked their Fifth Amendment privilege against self-incrimination in the context of a subpoena to testify at a deposition.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that "[p]arties may obtain discovery of any matter, not privileged, that is relevant to any party's claim or defense." The rule further states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." It is well-settled that Rule 26 establishes a liberal discovery policy. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 507-08 (1947); Great West Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994). As a general rule, therefore, discovery is permitted of any items that are relevant or may lead to the discovery of relevant information. Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996); Transcontinental Fertilizer Co. v. Samsung Co., 108 F.R.D. 650, 652 (E.D. Pa. 1985).

## 1.  This Court's Jurisdiction Over Higgin and Larsen

According to Fed. R. Civ. P. 45(a)(2)(B), a subpoena issued that requires an individual to attend a deposition must be issued "from the court for the district where the deposition is to be taken . . . ."  Similarly, Fed. R. Civ. P. 45(c)(3)(A)(ii) requires that a court that has issued a subpoena modify or quash such subpoena if the subpoena "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person . . . ."  According to Fed. R. Civ. P. 45(e), a court that has issued a subpoena "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."

Under the Federal Rules of Civil Procedure, it is clear that this Court may exercise proper jurisdiction over the subpoenas for attendance at a deposition that are at issue here.  As the depositions were to be taken in Coudersport, Pennsylvania, in the Middle District of Pennsylvania, this Court was the proper court to issue subpoenas to non-party witnesses Higgin and Larsen.  In addition, the Bank Defendants correctly note that to require Higgin and Larsen to travel to the Southern District of New York for their depositions would run counter to the spirit of Fed. R. Civ. P. 45(c)(3)(A)(ii).  As we have the power to compel the testimony of both witnesses and enforce the subpoena, this Court may exercise

jurisdiction over the Bank Defendants' motions to compel.

## 2. The Right Against Self-Incrimination

The Fifth Amendment to the United States Constitution states, in part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." A person may invoke the privilege against self-incrimination in a civil or criminal proceeding, at an administrative or judicial hearing, or in a setting that is adjudicatory or investigatory. Kastigar v. United States, 406 U.S. 441, 445 (1972) (citing Murphy v. Waterfront Comm'n, 378 U.S. 52, 94 (1964); McCarthy v. Arndstein, 266 U.S. 34, 40 (1924)). While the privilege protects an admission that on its own would support a criminal conviction, the privilege also protects admissions "which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 487 (1951) (citing Blau v. United States, 340 U.S. 159 (1950)).

Importantly, it is not enough for the witness simply to claim a privilege against self-incrimination under the Fifth Amendment. A person claiming a privilege under the Fifth Amendment "must be 'confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination.'" United States v. Doe, 465 U.S. 605, 614 (1984) (citing Marchetti v. United States, 390 U.S. 53 (1968)) (internal quotations omitted). The privilege against self-incrimination

7

"protects against real dangers, not remote and speculative possibilities." <u>Zicarelli v. New Jersey State Comm'n of Investigation</u>, 406 U.S. 472, 479 (1972).  However, it is also well-established that "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself -- his say-so does not of itself establish the hazard of incrimination." <u>Hoffman</u>, 341 U.S. at 487.

Generally, a witness should be required "'to answer questions only if it is perfectly clear, from a careful consideration of all the circumstances in the case that the answer cannot possibly tend to incriminate the witness.'" <u>Nelson v. Pilkington PLC (In re Flat Glass Antitrust Litig.)</u>, 385 F.3d 350, 371 (3d Cir. 2004) (<u>quoting United States v. Washington</u>, 318 F.3d 845, 856 (8th Cir. 2003)).

There are, of course, exceptions to the general rule that an individual may invoke the privilege against self-incrimination.  Two such exceptions are relevant to the present discussion.  First, "if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer." <u>Brown v. Walker</u>, 161 U.S. 591, 598 (1896).  Second, "[s]uspects who have been granted immunity from prosecution may . . . be compelled to answer; with the threat of prosecution removed, there can be no reasonable belief that the evidence will be used against them." <u>Hiibel v. Sixth Judicial Dist. Court</u>, 542 U.S.

177, 190 (U.S. 2004) (citing <u>Kastigar</u>, 406 U.S. at 453).

### 3.  Non-Party Witness Larsen

ART initially claims in its opposition brief that counsel should be appointed to represent Larsen if she so qualifies, as at the moment she is unrepresented. (Rec. Doc. No. 20 at 2).  In addition, ART argues that Larsen has a valid basis for believing that she could subject herself to prosecution if she were to attempt to answer questions posed by the Bank Defendants at her deposition.  <u>Id.</u> at 17.  As support for this proposition, ART contends that the non-prosecution agreement entered into between Larsen and the U.S. Attorney's Office for the Southern District of New York fails to provide blanket immunity and, therefore, cannot allay Larsen's fears as to the continued risk of prosecution.  <u>Id.</u> at 14-16.  For additional support, ART also points to the fact that the statute of limitations on all possible crimes of which Larsen could be convicted have not expired.  As an example, ART notes that the statute of limitations for bank fraud, which is ten years, has yet to expire.  <u>Id.</u> at 16 (citing 18 U.S.C. § 3293).

In their reply brief, the Bank Defendants argue that, in light of the fact that Larsen has not shown a need or desire for an attorney and the expedited briefing schedule concerning the motions to compel, it would be improper for a court to appoint counsel for Larsen.  (Rec. Doc. No. 23 at 9).  The Bank Defendants also

argue that Larsen has failed to show that there is any real danger of self-incrimination if she were to testify fully at her deposition.  Id. at 2-3.  Similarly, the Bank Defendants allege that, even if it were able to make a showing on behalf of a non-party witness such as Larsen, ART also has failed to show any real danger of self-incrimination on the part of Larsen if she were to testify.  Id. at 3-4.  As support for their contention that Larsen would not risk prosecution if she were to testify, the Bank Defendants reiterate the "broad grant of transaction and use immunity given to Ms. Larsen for her participation in the fraud at Adelphia . . . ."  Id. at 5.  The Bank Defendants point out that, while the statute of limitations for federal bank fraud is ten years, the crime is covered by Larsen's non-prosecution agreement with the U.S. Attorney's Office for the Southern District of New York, and it is unlikely that any other U.S. Attorney's Office would seek to prosecute her for such an offense.  Id. at 6.

Although the time had passed for filing a response, Larsen sent a memorandum dated November 17, 2009 to Attorney Lawrence Kotler, counsel to the Bank Defendants in this litigation.  (Rec. Doc. No. 25-2).  In this memorandum, Larsen noted that she was vacationing "from October 31, 2009 through November 20, 2010 . . . ."  Id. at 1.  Upon returning home, she found a number of messages from Federal Express seeking to deliver packages; apparently,

the address on these packages was incorrect.  Id.  Larsen reiterated that the non-

prosecution agreement she had entered into with the U.S. Attorney's Office for the

Southern District of New York was limited only to that district "and only pertained

to [her] testimony in the criminal trial."  Id.  Larsen stated that she believes she has

"a genuine fear of possible prosecution based on [her] responses to these questions

and others."  Id.

The Bank Defendants filed a reply to Larsen's November 17, 2009

memorandum on November 18, 2009.  (Rec. Doc. No. 25).  In their reply, the Bank

Defendants argue that Larsen still has failed to demonstrate that, if she were to

answer the questions asked of her at her deposition, she would face a real and

substantial risk of self-incrimination.  Id. at 1-2.  As additional support, the Bank

Defendants point to the fact that more than seven years have passed since the

events relevant to the litigation and the non-prosecution agreement entered into

between herself and the federal government.  Id. at 3.

## A.  Appointment of Counsel

First, we conclude that it would be inappropriate for this Court to appoint an

attorney to represent Larsen.  Currently, the parties are operating under an

expedited briefing schedule dictated by the recently expired discovery deadline and

the January 15, 2010 deadline for the filing of summary judgment motions.  To

appoint counsel to represent Larsen would unnecessarily delay the underlying

action and render the expedited briefing schedule meaningless.  In addition, Larsen

has not sought the appointment of counsel, instead apparently deciding to proceed

on the informal guidance of her husband, who is an attorney, and recommendations

of prior counsel.  In light of the above, then, we believe that appointing counsel for

Larsen in this matter is unwarranted.  As such, we will deny ART's request for

appointing Larsen counsel.

### B.  Effect of the Non-Prosecution Agreement

Second, the Bank Defendants make much of the "broad grant of immunity

given to [Larsen] by the federal government . . . ."  (Rec. Doc. No. 25 at 3).  In

light of such immunity, the Bank Defendants claim, Larsen has failed to show how

her fear of prosecution is real and substantial.  Id.

However, as Larsen stated in her November 17, 2009 memorandum, she

holds the reasonable belief that the non-prosecution agreement she entered into

was limited to the Southern District of new York only.  (Rec. Doc. No. 25-2 at 1).

The agreement itself supports Larsen's belief, as it states in pertinent part that "*the*

*Office of the United States Attorney for the Southern District of New York* . . . will

not criminally prosecute Karen A. Chrosniak . . . for any crimes (except for

criminal tax violations as to which this Office cannot and does not make any

agreement) . . . ." (Rec. Doc. No. 20, Block Decl. Ex. A at 1) (emphasis added).

Additionally, the non-prosecution agreement states that it "does not bind any federal, state or local prosecuting or regulatory authority other than this Office." Id. at 3. If Larsen breaches the agreement, notwithstanding the termination of the otherwise relevant statute of limitations, "[a]ny prosecution that is not time-barred by the applicable statute of limitations on the date of the signing [of the agreement] may be commenced against [Larsen] . . . ." Id. at 2.

In light of the above, it appears that Larsen holds a reasonable belief that the non-prosecution agreement does not provide a "broad grant of immunity"; on the contrary, the non-prosecution agreement appears carefully drafted to bind only the U.S. Attorney's Office for the Southern District of New York. In addition, it specifically notes that the federal government may still bring a tax prosecution, with special rules concerning the application of statues of limitations not time-barred on the date that the agreement was signed. In light of the above, we conclude that the non-prosecution agreement entered into between Larsen and the U.S. Attorney's Office for the Southern District of New York cannot be used to compel Larsen to testify in the present matter by making invocation of the Fifth Amendment privilege against self-incrimination inapplicable.

## C.  Relevant Statute of Limitations

Third, the Bank Defendants point to the passage of more than seven years since the events at issue occurred as support for the claim that Larsen has failed to show a real and substantial risk of prosecution if she were to testify.  (Rec. Doc. No. 25 at 3).  While the statute of limitations for bank fraud, for example, is in fact ten years, <u>see</u> 18 U.S.C. § 3293, the Bank Defendants claim that there is "no factual basis to believe that a sister United States Attorney's Office . . . is realistically interested in pursuing a criminal bank fraud charge against Ms. Larsen after the USAO for the Southern District of New York granted her immunity from prosecution for that offense."  (Rec. Doc. No. 23 at 6).

We note that we are not so confident as the Bank Defendants that such a U.S. Attorney's Office does not exist.  After all, as Larsen noted in her November 17, 2009 memorandum, her counsel during the criminal trial advised her to assert her privilege against self-incrimination in similar depositions in civil matters. (Rec. Doc. No. 25-2 at 1).  In addition, we cannot conclude that many of the answers Larsen would have to provide if compelled to testify at her deposition could not "'possibly tend to incriminate'" her.  <u>Nelson</u>, 385 F.3d at 371 (3d Cir. 2004) (quoting <u>Washington</u>, 318 F.3d at 856 (8th Cir. 2003)).  Even more so, the possibility still exists that, notwithstanding the expiration of the otherwise relevant

statute of limitations, a prosecution "not time-barred . . . on the date [of the signing of the non-prosecution agreement] may be commenced against [Larsen]" if the U.S. Attorney's Office for the Southern District of New York were to conclude that Larsen in some way breached the agreement.  (Rec. Doc. No. 20, Block Decl. Ex. A at 1-2).

In light of the above, we conclude that the statute of limitations for at least one highly-relevant federal crime has not run.  Therefore, we decline to compel Larsen, based on the running of all relevant statutes of limitations, to testify as to all of the questions asked at her deposition.

### 4.  Non-Party Witness Higgin

ART initially claims in its opposition brief that Higgin was entitled to invoke his privilege against self-incrimination because, even concerning the most basic of background questions, an answer could provide "a link in the chain of evidence needed to prosecute the claimant for a federal crime."  (Rec. Doc. No. 20 at 7-8); Hoffman, 341 U.S. at 487 (citing Blau, 340 U.S. 159).  ART also notes that the statute of limitations for bank fraud will not expire until 2012, as any criminal conduct at issue would not have ceased until some time in 2002.  (Id. at 11).  Additionally, ART alleges that Higgin may have engaged in conduct that could subject him to criminal liability for conspiracy.  (Id. at 12 (arguing that "Mr.

Higgin's continued financial benefit from the Rigases – in the form of rent-free housing and additional compensation – could alone constitute additional overt acts in support of a continuing conspiracy . . .").

In response, the Bank Defendants argue that ART does not possess standing to argue on behalf of Higgin's invocation of his Fifth Amendment privilege and, even if it did, it has waived such standing by making statements that tend to show it actually would welcome testimony by Higgin.  (Rec. Doc. No. 24 at 5-7).  The Bank Defendants also argue that Higgin himself has failed to demonstrate a real or substantial risk of self-incrimination; therefore, he should be compelled to testify. Id. at 3-5.  In addition, the Bank Defendants allege that "[t]he seven years since Higgin left Adelphia in 2002 have placed his actions outside the limitations periods for prosecution of any potential crimes that might relate to his testimony."  (Rec. Doc. No. 11-2 at 10).

In his response to the Bank Defendants' motion to compel testimony, Higgin attached a letter sent by his attorney to Christopher Clark, an Assistant U.S. Attorney in the U.S. Attorney's Office for the Southern District of New York. (Rec. Doc. No. 18 at 3-4).  Higgin claims that the letter shows he "is both a subject and target of the U.S. Attorney's Office criminal prosecution of securities and bank fraud at Adelphia . . . ." Id. at 1.  Higgin also claims the letter confirms "the

initiation of the completely new charge of perjury against" him.  Id.  However,

Higgin's counsel clearly states in the letter that Mr. Higgin was not identified as a

"target," but only as a "subject."  Id. at 3.  There is also no mention of any perjury

charges against Higgin.

## A.  ART's Standing or Waiver Thereof

The Bank Defendants claim that ART does not have standing to oppose the

Bank Defendants' motion to compel and that ART has waived any such standing

by declaring that it would welcome Higgin's testimony.  The Bank Defendants also

have made much of the fact that it is Higgin's burden to demonstrate a real and

substantial danger of self-incrimination as to each question that is asked.  (Rec.

Doc. No. 24 at 3).

We cannot accept the Bank Defendants' argument that, because ART does

not have standing to oppose the Bank Defendants' motion, or because ART has

waived such standing, the motion to compel must be granted.  The Bank

Defendants cite no law as support for their argument that ART has waived

standing, and the Bank Defendants cite to only one case, decided by a United

States District Court in the Eastern District of Pennsylvania, for the proposition

that ART lacks standing to oppose the Bank Defendants' motion. (Rec. Doc. No.

24 at 5).  The issue in that case, New Park Entertainment L.L.C. v. Electric Factory

Concerts, Inc., 2000 U.S. Dist. LEXIS 531 (E.D. Pa. Jan. 13, 2000), concerned subpoenas issued by the plaintiff to six non-parties in an antitrust action. The plaintiff in New Park Entertainment argued that the defendants did not have standing to oppose the court's issuing subpoenas on the non-party witnesses. Id. at *12. However, before the court in New Park Entertainment was the defendants' joint motion for a protective order; in addition, the case law cited by the court in New Park Entertainment concerned whether a party had standing when that party filed a motion for a protective order or to quash a subpoena served on a non-party. See Davis v. Gen. Accident Ins. Co., 1999 U.S. Dist. LEXIS 5344, at *2-3 (E.D. Pa. April 15, 1999); Norris Mfg. Co. v. R.E. Darling Co., 29 F.R.D. 1 (M.D. Md. Dec. 5, 1961).

In contrast, the instant matter concerns the invocation of an individual's Fifth Amendment privilege against self-incrimination. In addition, the authority referenced by the Bank Defendants is not binding and is unpersuasive in light of the procedural context and factual distinctions. Therefore, we are unconvinced that ART lacks standing to oppose the motion to compel or that it waived such standing as a result of its briefing with this Court.

### B.  Relevant Statutes of Limitations

The Bank Defendants also argue that, with the passage of time and the

relevant statutes of limitations, Higgin does not face a real or substantial risk of prosecution.  Higgin claims that such a risk still exists.

We must agree with Higgin that, for a substantial number of questions asked of him at his deposition, any answer proffered by Higgin would risk "furnish[ing] a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman, 341 U.S. at 487.  First, much of Higgin's testimony could implicate him in the crime of bank fraud, which is accompanied by a statute of limitations of ten years.  See 18 U.S.C. § 3293.  Therefore, as Higgin only ceased working for Adelphia in 2002, at the present time Higgin is still susceptible to being prosecuted for the crime of bank fraud.  Second, Higgin's testimony could also implicate him in a conspiracy entered into with the Rigases.  See (Rec. Doc. No. 20 at 12) (positing that Higgin has received a "continued financial benefit . . . in the form of rent-free housing and additional compensation . . ." from the Rigases).

In light of the above, we conclude that the statute of limitations for bank fraud has not run.  Higgin could also be susceptible to prosecution for criminal conspiracy.  Therefore, we must decline to compel Higgin, based on the running of all relevant statutes of limitations, to testify as to all of the questions asked of him at his deposition.

## 5.  Application of the Fifth Amendment Privilege

It is evident that both Larsen and Higgin have more than a generalized fear of being criminally prosecuted.  In fact, in the case of both non-party witnesses, there are highly-relevant crimes with statutes of limitations that have yet to run.  In Larsen's case, though she has entered into a non-prosecution agreement with federal authorities, such agreement appears narrower than the Bank Defendants have suggested.  In light of the above, we must conclude that both Larsen and Higgin face a real danger of incrimination if they were required to testify at their depositions without being entitled to invoke their Fifth Amendment privilege against self-incrimination.

While we have concluded that a real danger of incrimination exists, we still must determine the exact scope of that privilege.  We will ascertain the extent of that privilege by allowing each non-party witness the opportunity, in an in camera proceeding, to support the claim of privilege.  See United States v. Argomaniz, 925 F.2d 1349, 1355 (11th Cir. 1991) (remanding the matter to the district court "to enable that court to conduct an *in camera* proceeding, on a question-by-question basis, to determine the actual extent to which [the witness] may rely on his [F]ifth [A]mendment privilege . . ."); United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996) (remanding the action to "the district court to conduct a hearing

regarding the validity of [the witness's] Fifth Amendment objections as to each specific question posed by the IRS").  By conducting such a hearing, we will be able to make out, on a question-by-question basis, the appropriateness of the objections by each non-party witness.

**CONCLUSION:**

In light of the foregoing, we will deny the Bank Defendants' motion to compel the deposition testimony of both Larsen and Higgin.  We will also order an in camera hearing to determine, on a question-by-question basis, the scope of the Fifth Amendment privilege against self-incrimination to which Larsen and Higgin are entitled.

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | : | Case No. 4:09-MC-00139 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

November 24, 2009

**IT IS HEREBY ORDERED THAT:**

1. The Bank Defendants' motions to compel are DENIED. (Rec. Doc. Nos. 11 and 13).

2. An in camera hearing on the scope of Larsen's Fifth Amendment privilege against self-incrimination is scheduled for December 18, 2009, at 1:30 p.m. in Courtroom No. 3, Third Floor, Federal Building, 240 West Third Street, Williamsport, Pennsylvania. Larsen is directed to attend.

3. An in camera hearing on the scope of Higgin's Fifth Amendment privilege against self-incrimination is scheduled for December 15, 2009, at 1:30

22

p.m. in Courtroom No. 3, Third Floor, Federal Building, 240 West Third Street,

Williamsport, Pennsylvania. Higgin is directed to attend.

4.  The only persons permitted to attend each in camera hearing are the

witness and his or her counsel, if any.

5.  The Bank Defendants are required to file a transcript of Larsen's criminal

trial testimony at least ten days in advance of Larsen's in camera hearing.

6.  The record  of each in camera hearing will be sealed unless and until

otherwise ordered by the Court.


s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge