IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | : | Case No. 4:09-MC-00139 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

December 29, 2009

**BACKGROUND:**

The present matter before this Court arises out of the bankruptcy proceedings of Adelphia Communications Corporation ("ACC"). After ACC filed for bankruptcy in 2002, a recovery trust called the Adelphia Recovery Trust ("ART") was created. ART, the plaintiff in the present matter, has since filed an action in the United States District Court for the Southern District of New York against more than forty financial institutions and their respective investment banking firms ("Bank Defendants"). In this action, ART claims that the Bank Defendants "knowingly aided and abetted a fraud by the ACC's majority shareholders and directors . . . " by providing loans to particular subsidiaries of ACC. (Rec. Doc. No. 13 at 2). ART alleges billions of dollars in damages. Id.

As part of the underlying litigation in the Southern District of New York, this Court issued two subpoenas to appear for depositions and produce documents to two non-party witnesses living in Coudersport, Pennsylvania. The two non-party witnesses are Colin Higgin, the former Deputy General Counsel of ACC, and Karen Chrosniak Larsen, the former Director of Investor Relations. (Rec. Doc. Nos. 11 and 13). Both Higgin and Larsen appeared for their depositions, at which they invoked their Fifth Amendment right against self-incrimination to nearly all of the questions asked by the Bank Defendants' counsel.

On October 30, 2009, the Bank Defendants filed motions to compel the deposition testimony of Higgin and Larsen. (Rec. Doc. Nos. 11 and 13). Also on October 30, 2009, the Bank Defendants filed a motion to expedite consideration of their motions to compel the testimony of both Higgin and Larsen. (Rec. Doc. Nos. 12 and 14). On November 2, 2009, we granted the Bank Defendants' motion for expedited consideration of their motions to compel deposition testimony from Higgin and Larsen. (Rec. Doc. Nos. 15 and 16).

Pursuant to this expedited briefing schedule, Higgin filed a response to the Bank Defendants' motion to compel on November 9, 2009. (Rec. Doc. No. 18). Plaintiff ART filed a brief opposing the Bank Defendants' motions to compel the testimony of Higgin and Larsen also on November 9, 2009. (Rec. Doc. No. 20).

On November 16, 2009, the Bank Defendants filed reply briefs in support of their motions to compel the deposition testimony of Larsen and Higgen. (Rec. Doc. No. 23 and 24).

On November 24, 2009, we denied the Bank Defendants' motion to compel the deposition testimony of Higgin and Larsen and ordered an in camera hearing to determine the scope of Higgin and Larsen's Fifth Amendment privilege against self-incrimination. In our November 24, 2009 Memorandum and Order, we noted that relevant statutes of limitations had yet to run for federal crimes as to both Higgin and Larsen and that a real danger of self-incrimination existed for each witness. As such, we ordered an in camera hearing for both Higgin and Larsen to determine the scope of each witness's Fifth Amendment privilege against self-incrimination.

This Court conducted an in camera hearing with Higgin and Larsen on December 15, 2009, and December 28, 2009, respectively. Now, for the following reasons, we will grant in part the Bank Defendants' motion to compel with respect to Higgin and deny the Bank Defendants' motion to compel with respect to Larsen.

**DISCUSSION:**

The issue before this Court is whether Larsen and Higgin properly have invoked their Fifth Amendment privilege against self-incrimination in the context of a subpoena to testify at a deposition.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that "[p]arties may obtain discovery of any matter, not privileged, that is relevant to any party's claim or defense." The rule further states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." It is well-settled that Rule 26 establishes a liberal discovery policy. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 507-08 (1947); Great West Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994). As a general rule, therefore, discovery is permitted of any items that are relevant or may lead to the discovery of relevant information. Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996); Transcontinental Fertilizer Co. v. Samsung Co., 108 F.R.D. 650, 652 (E.D. Pa. 1985).

## A. The Privilege Against Self-Incrimination

The Fifth Amendment to the United States Constitution states, in part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." A person may invoke the privilege against self-incrimination in a civil or criminal proceeding, at an administrative or judicial hearing, or in a setting that is adjudicatory or investigatory. Kastigar v. United States, 406 U.S. 441, 445 (1972) (citing Murphy v. Waterfront Comm'n, 378 U.S. 52, 94 (1964); McCarthy v. Arndstein, 266 U.S. 34, 40 (1924)). While the privilege protects an admission that on its own would support a criminal conviction, the privilege also protects admissions "which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 487 (1951) (citing Blau v. United States, 340 U.S. 159 (1950)).

Importantly, it is not enough for the witness simply to claim a privilege against self-incrimination under the Fifth Amendment. A person claiming a privilege under the Fifth Amendment "must be 'confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination.'" United States v. Doe, 465 U.S. 605, 614 (1984) (citing Marchetti v. United States, 390 U.S. 53 (1968)) (internal quotations omitted). The privilege against self-incrimination "protects against real dangers, not remote and speculative possibilities." Zicarelli

v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 479 (1972). However, it is also well-established that "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself -- his say-so does not of itself establish the hazard of incrimination." Hoffman, 341 U.S. at 487.

Generally, a witness should be required "'to answer questions only if it is perfectly clear, from a careful consideration of all the circumstances in the case that the answer cannot possibly tend to incriminate the witness.'" Nelson v. Pilkington PLC (In re Flat Glass Antitrust Litig.), 385 F.3d 350, 371 (3d Cir. 2004) (quoting United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003)).

There are, of course, exceptions to the general rule that an individual may invoke the privilege against self-incrimination. For example, "if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer." Brown v. Walker, 161 U.S. 591, 598 (1896). In addition, "[s]uspects who have been granted immunity from prosecution may . . . be compelled to answer; with the threat of prosecution removed, there can be no reasonable belief that the evidence will be used against them." Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 190 (U.S. 2004) (citing Kastigar, 406 U.S. at 453).

6

## B.  The Scope of Larsen's Fifth Amendment Privilege

We are constrained to conclude that Larsen's anticipated deposition testimony would fall within the purview of the privilege against self-incrimination under the Fifth Amendment.  If Larsen were to answer any of the remaining questions from the October 1, 2009 deposition, she would face a substantial and real danger of incrimination.  Certainly it is not "perfectly clear" that Larsen's anticipated answers could not "possibly tend to incriminate" her.  See Nelson, 385 F.3d at 371.  The questions asked of Larsen at her October 1, 2009 deposition go directly to her duties, responsibilities, and actions related to her former position as Director of Investor Relations for Adelphia.  These duties, responsibilities, and actions are potentially incriminatory to Larsen to a very real and substantial degree.  We therefore find the Bank Defendants' argument that the deposition questions fail to raise a substantial risk of self-incrimination to be without merit.

Additionally, the Bank Defendants overstate the scope of the non-prosecution agreement reached between Larsen and the United States Attorney's Office for the Southern District of New York.  First, that agreement was reached only between Larsen and the United States Attorney's Office for the Southern

District of New York.[1]  Second, while the agreement does provide immunity to Larsen for crimes she may have committed from approximately February of 2000 through May of 2002 as part of a scheme to defraud Adelphia creditors and investors, such immunity was granted only "to the extent any such crimes *have been disclosed to this Office as of the date of the signing of this Agreement.*" (Rec. Doc. No. 13, Exhibit A-2, at 2) (emphasis added).  Third, inter alia, the agreement requires that Larsen "shall truthfully testify before the grand jury and at any trial and other court proceeding *with respect to any matters about which this Office* may request her testimony . . . ." Id. at 3 (emphasis added).  Fourth, it is also clear, pursuant to the agreement, that a prosecution "not time-barred by the applicable statute of limitations on the date of the signing of [the agreement] may be commenced against [Larsen], notwithstanding the expiration of the statute of limitations between the signing of [the agreement] and the commencement of such prosecution." Id. (emphasis added).

      In light of the above, we conclude that Larsen has properly invoked her

---

[1] The non-prosecution agreement, dated October 2, 2002, notes that "*the Office of the United States Attorney for the Southern District of New York* ('this Office') will not criminally prosecute Karen A. Chrosniak . . . ." (Rec. Doc. No. 13, Exhibit A-2, at 2) (emphasis added).  In addition, the agreement specifically states that it "does not bind any federal, state or local prosecuting or regulatory authority *other than this Office*." Id. at 4 (emphasis added).

Fifth Amendment privilege and properly has answered those questions not implicated by the privilege. If Larsen were to answer the remaining questions asked of her at the October 1, 2009 deposition, she would risk incrimination to a substantial and real degree. As such, we will deny the Bank Defendants' motion to compel her deposition testimony.

### C. The Scope of Higgin's Fifth Amendment Privilege

We are also constrained to conclude that Higgin, to an overwhelming degree, has similarly invoked his Fifth Amendment privilege against self-incrimination in a proper fashion. However, we do conclude that Higgin should be required to answer a number of questions asked of him at his October 2, 2009 deposition. As such, we will grant the Bank Defendants' motion to compel in part pursuant to our discussion below.

There are several categories of questions asked at Higgin's deposition which on their face are "facially innocuous" and to which Higgin should be compelled to answer. See Donovan v. Spadea, 757 F.2d 74, 78 (3d Cir. 1985) (agreeing with the district court that particular questions asked of the witness "are facially innocuous and do not appear likely to elicit incriminatory responses"). Higgin should be compelled to answer those questions asked of him that pertain to his education and employment prior to his beginning employment with Adelphia

9

in 1992. In addition, Higgin should be required to answer those questions pertaining to when his work with Adelphia began and ended and whether he has ever been party to a lawsuit. We also conclude that Higgin should be compelled to answer those questions asked at his deposition relating to whether he was previously interviewed by attorneys in connection with his employment at Adelphia.

We conclude that the above questions are "facially innocuous" and that Higgin has failed to show that he would face a substantial or real risk of incrimination if he were required to answer these questions. Higgin's say-so does not establish a <u>per se</u> risk of incrimination, and we conclude that answers to the above questions "cannot possibly tend to incriminate" him. <u>Nelson</u>, 385 F.3d at 371.

**CONCLUSION:**

In light of the foregoing, we conclude that the Bank Defendants' motion to compel as to Larsen must be denied. The motion to compel as to Higgin will be granted in part, in accordance with the reasoning above.

<u>s/James F. McClure, Jr.</u>
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | : | Case No. 4:09-MC-00139 |
| Plaintiff, | : | |
| v. | : | (Judge McClure) |
| BANK OF AMERICA, N.A., et al., | : | |
| Defendants. | : | |

## ORDER

December 29, 2009

**IT IS HEREBY ORDERED THAT:**

1. The Bank Defendants' "Motion to Compel Deposition Testimony from Nonparty Colin Higgin" is GRANTED IN PART AND DENIED IN PART in accordance with the accompanying Memorandum. (Rec. Doc. No. 11).

2. The Bank Defendants' "Motion to Compel Deposition Testimony from Non-Party Karen Chrosniak Larsen" is DENIED. (Rec. Doc. No. 13).

3. The clerk is directed to provide a copy of this memorandum and order to Colin Higgin and Karen Chrosniak Larsen.

s/James F. McClure, Jr.<br>
James F. McClure, Jr.<br>
United States District Judge